**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KELLI BURNS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-1450-BF |
| | § | |
| **LESA A. BRANSTETTER,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before United States Magistrate Judge Paul D. Stickney. On August 20, 2012, the parties tried this case to the Court.

### Background

This case was properly removed to this Court by Defendant Lesa A. Branstetter ("Defendant") and this Court has original jurisdiction pursuant to the provisions of 28 U.S.C. § 1441 in that it is a civil action between citizens of different states. Defendant is, and has been at all pertinent times, a citizen of Missouri. Plaintiff Kelli Burns ("Plaintiff") is, and has been at all pertinent times, a citizen of Texas. The amount in controversy exceeds $75,000. Venue is proper in this District and Division.

In the Joint Pretrial Order, the parties do not dispute that this case is governed by Texas law and stipulate to the following facts:

> In April of 2007, Defendant sold the real property located at 214 E. 4th St., Anna, Texas 75409 to Plaintiff. Prior to that sale, Defendant represented on the statutorily required Seller's Disclosure Notice that there was no previous flooding onto the property. The total purchase price of the home, including settlement charges, was $107,000.
>
> The parties contested whether Defendant knew of prior flooding on the property she was

selling to Plaintiff, whether Defendant intended Plaintiff to rely on Defendant's Seller's Disclosure Notice which disclosed no prior flooding onto the property; and the amount of damages, if any, that Ms. Burns sustained.

## Standard of Review

### Fraud in a Real Estate Transaction

To establish statutory fraud in a real estate transaction under Texas law, a plaintiff must show (1) a false representation of a material fact (2) made to induce a person to enter a contract and (3) relied on by that person in entering into the contract. TEX. BUS. & COM CODE § 27.01(a)(1) (Vernon 2002). Section § 27.01 "does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages." *Burleson State Bank,* 27 S.W.3d at 611 (explaining difference between common law fraud and statutory fraud); *see Brush v. Reata Oil and Gas Corp.,* 984 S.W.2d 720, 726 (Tex.App.-Waco 1998, pet. denied) (same). It must, however, be made with the intent to induce the claimant into entering the transaction. *Robbins v. Capozzi,* 100 S.W.3d 18, 26 (Tex.App.-Tyler 2002, no pet.).

### Common Law Fraud

The elements of common law fraud are: (1) a material representation was made; (2) the representation was false; (3) when making the representation, the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent it would be acted upon by the other party; (5) the other party acted in reliance upon the representation; and (6) the party thereby suffered injury. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990); *Milestone Properties, Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 119 (Tex.App.-Austin 1993, no writ).

**Breach of Contract**

"Under Texas law, '[t]he essential elements in a breach of contract claim are as follows: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.'" *Bridgmon*, 325 F.3d at 577 (quoting *Frost Nat'l Bank v. Burge,* 29 S.W.3d 580, 593 (Tex.App.—Houston [14th Dist.] 2000, no pet.)); *accord Alcan Aluminum Corp. v. BASF Corp.,* 133 F.Supp.2d 482, 491 (N.D.Tex.); *Dorsett v. Cross,* 106 S.W.3d 213, 217 (Tex.App.—Houston [1st Dist.] 2003, pet. denied). A breach occurs when a party fails or refuses to perform an act that it has expressly promised to perform. *See Dorsett,* 106 S.W.3d at 217; *Townewest Homeowners Ass'n, Inc. v. Warner Communication Inc.*, 826 S.W.2d 638, 640 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Methodist Hosps. of Dallas v. Corporate Communicators, Inc.,* 806 S.W.2d 879, 882 (Tex.App.—Dallas 1991, writ denied); *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

**Findings of Fact and Conclusions of Law**

Plaintiff appeared by Counsel David R. Gibson and Defendant appeared *pro se*. The Court swore in the following witnesses and heard their testimony: Plaintiff, Defendant, Mr. Fred Haas ("Mr. Haas"), Mr. Mark Beaty (Mr. Beaty"), Ms. Kimberly Luther ("Ms. Luther"), and Mr. William Olsan ("Mr. Olsan").

On April 11, 2007 Defendant and Plaintiff entered into a contract (the "contract") for the sale of Defendant's property at 214 E. 4th St., Anna, Texas 75409 (the "property"), to Plaintiff. Defendant had built the home on the property in 1995 and lived there until she sold it to Plaintiff about eleven years later. Plaintiff, who had recently relocated from California to Texas, purchased

the property because it was in a safe neighborhood and had a large back yard. Plaintiff has no children but needed a yard for her boxer and beagle to enjoy. Plaintiff's boxer was especially important to her. The back yard did not have a fence, but Plaintiff anticipated at the time of purchase that she would have one built.

The purchase price for the property was $97,895. The "Property Condition" part of the contract provided that the buyer could have access to the property for inspections at reasonable times and further provided that the buyer had received the "Seller's Disclosure Notice Pursuant to § 5.008, Texas Property Code" ("Seller's Disclosure Notice"). Additionally, the contract provided that the buyer accepts the property in its present condition; provided Seller, at Seller's expense, shall complete specific repairs and treatments to be negotiated based upon inspection.

Defendant's real estate agent testified that she requested Defendant to fill out the Seller's Disclosure Notice and told her that it is required by law that she do so. Defendant did not recall completing the Seller's Disclosure Notice, but assumed that she did. She did not recall whether she read it before she filled it out. She did not remember reading that, as the seller, she was supposed to disclose her knowledge of the property and that it was not a substitute for any kind of inspections the buyer might obtain. She assumed the Realtor wanted it or the Realtor would not have sent it to her and told her to fill it out. Defendant's testimony was evasive and less than credible.

With respect to previous flooding, the Seller's Disclosure Notice had two provisions: Previous Flooding into the Structures and Previous Flooding onto the Property. In Requests for Admissions, Defendant admitted that she (1) prepared the original of the Seller's Disclosure Notice dated September 16, 2006, and (2) represented to Plaintiff that there had been no previous flooding onto to the property.

Plaintiff received the Seller's Disclosure Notice before she entered the contract to buy the property. She relied heavily on the Seller's Disclosure Notice because she knew it was her opportunity to find out if there were any issues that the seller had experienced with the property that she would not know about because she had not lived there. Plaintiff had moved to Texas from Southern California and knew nothing about Texas weather patterns. Plaintiff also received a home inspection report, but the report did not indicate anything about flooding. The parties closed on the sale of the home on or about the April 27, 2007 closing date provided in the contract, and Plaintiff moved into the home after the closing.

After Plaintiff moved into the home, she experienced flooding onto the property. A storm came through the first night that she lived there, and when she awoke the next morning, there was a considerable amount of water pooled in the back yard. The water was inches deep in various places. After that, with minimal amounts of rain, she always experienced pools of water in the back yard. However, with a significant amount of rain, the back yard and the side yard flooded. With extremely heavy rains, even the front yard flooded. The front yard flooded approximately four to five times from 2007 to the date of trial. When it rained about an inch a day for several days, the back yard flooded. This happened frequently enough, and the water stood in the back yard long enough each time, that the back yard was completely unusable for Plaintiff, her boxer and her beagle. The Court admitted into evidence Plaintiff's photographs which showed flooding and standing water measuring up to a foot at various times of the year in 2009, 2010, and 2012.

Mr. Haas, a resident of Anna, Texas, corroborated Plaintiff's testimony about the flooding onto the property. Before Plaintiff moved in, Mr. Haas drove by the home during a heavy rain. Mr. Haas could not see the grass in the back yard because it was covered in water several inches deep.

Mr. Haas viewed the photograph with Plaintiff's boxer in it and confirmed that what he saw looked like the photograph. The Court finds that Plaintiff and Mr. Haas are credible witnesses.

Defendant admitted that she "possibly" had seen water that looked like that depicted in the photograph marked Exhibit 6, L. However, when questioned about the deep water standing in the back yard and the front yard in other photographs, she was evasive. Defendant, who admitted she is not an expert on fences, attempted to blame the flooding on the back-yard fence built approximately one year after the house was sold. Nevertheless, Defendant presented no credible evidence that the fence cause the back-yard flooding. There was credible evidence that holes in the fence allowed the water to escape. Defendant's explanation for failing to notify Plaintiff of flooding onto the property purportedly was based upon Defendant's own definition of flooding, i.e., the amount of water generated in the streets by Hurricane Katrina, where a person would need a boat to navigate an area. This definition is not in conformity with fact or truth. The Court finds that a reasonable person experiencing the type of flooding onto the property that obviously occurred would answer "yes" to the question "were you aware of previous flooding onto the property" in the Sellers Disclosure Notice.

The inspection of the house took place on a dry day. Although the inspector's report indicated problems with grading and drainage close to the house and recommended gutters with downspouts to send the water away from the house, Defendant unilaterally decided the grading and drainage did not need repair. Ms. Branstatter stated in open court that she considered everything that was found necessary in the inspection report to be an insult to the way she took care of her house.

Mr. Beaty, a real estate appraiser for 24 years in Collin County, performed two appraisals.

He was tasked with determining both the fair market value of the property based on the assumption that the property does not flood and the fair market value of the property based on the assumptions that the property floods and the buyer was aware of the flooding issues. Mr. Beaty appraised the fair market value of the property without flooding at $95,000 and the fair market value of the property with flooding (as depicted in the photographs) at $60,000, for a diminution in fair market value of $35,000. The appraisals were retrospective to May 5, 2007, the date that was provided to Mr. Beaty as the approximate purchase date of the property. Mr. Beaty described his credentials and the methodology he employed for the retrospective appraisals. The expert testimony of the appraiser Mr. Beaty was credible, well-supported, and satisfied all elements admissibility under *Daubert* and its progeny.

      Section 5.008(d) of the Texas Property Code required Defendant to provide all of the information on the Seller's Disclosure Notice to the best of her belief and knowledge.[1] If the information was not known to her, she had a statutory duty to indicate that fact on the notice. If Defendant was confused about what the notice meant by "flooding onto the property," she should have indicated that on the Notice. With respect to Plaintiff's claim that Defendant committed statutory fraud under TEX. BUS. & COM. CODE § 27.01 by making false representations of fact for the purpose of inducing her to enter into a contract for purchase of the home, Plaintiff has produced convincing evidence of flooding onto the property both before and after the closing date. The record

---

[1] The terms of V.T.C.A., Property Code § 5.008 (d) provide:

> The [Seller's Notice of Property Condition] shall be completed to the best of seller's belief and knowledge as of the date the notice is completed and signed by the seller. If the information required by the notice is unknown to the seller, the seller shall indicate that fact on the notice, and by that act is in compliance with this section.

contains no evidence that any changes in the weather or in the condition of the property caused flooding onto the property to occur only after Defendant moved out. Section 27.01 "does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages." *Burleson State Bank,* 27 S.W.3d at 611 (explaining difference between common law fraud and statutory fraud); *see Brush v. Reata Oil and Gas Corp.,* 984 S.W.2d 720, 726 (Tex.App.-Waco 1998, pet. denied) (same). All of the competent evidence demonstrates that Defendant was aware of previous flooding onto the property at the time she signed the Seller's Disclosure Statement, and her representation was therefore false. Defendant's intent was that Plaintiff enter the contract for sale. Plaintiff relied upon Defendant's statement in buying the property because she was purchasing the property with the intent that she and her dogs could enjoy the large back yard. Plaintiff was deprived of this enjoyment by the flooding onto the property. Defendant committed statutory fraud in a real estate transaction. In addition to actual damages Plaintiff is entitled to recover her reasonable and necessary attorney fees, expert witness fees, costs for copies of depositions, and court costs incurred in prosecuting this case. Tex. Bus & Com. Code § 27.01(b)( & (e).

Plaintiff requested punitive damages pursuant to § 27.01(c). Under Texas law exemplary damages are appropriate where there is a showing of malice. *Palmer v. Fuqua*, 641 F.2d 1146, 1161 (5th Cir. 1981). The Court finds that this is not an appropriate case in which to award punitive damages in addition to the actual damages, attorney fees, and costs to which Plaintiff is entitled.

Common law fraud occurs when a party (1) makes a material representation; (2) the representation was false; (3) the speaker knew the representation was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent it would be acted upon by the other party; (5) the other party acted in

reliance upon the representation; and (6) the other party thereby suffered injury. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990). Misrepresentation means a false statement of fact. The Court finds that the evidence of record supports each of these elements. Defendant committed common law fraud for which Plaintiff is entitled to her actual damages, the diminution of the value of the property.

With respect to Breach of Contract, Plaintiff presented no evidence that Defendant failed or refused to do an act she had promised to perform. Instead, the thrust of Plaintiff's complaint is that Defendant failed to disclose material information that she was aware of flooding onto the property. The issue is one of purported statutory fraud in a real estate transaction and common law fraud, not breach of contract. Plaintiff shall take nothing by way of her claim for breach of contract.

## Damages

The competent evidence shows that Plaintiff was damaged in the amount of $35,000 dollars by the diminution in the value of the property with flooding onto the property, as opposed to the value of the property as represented. Plaintiff is also entitled to her reasonable and necessary attorney fees and costs. Plaintiff shall submit a bill of costs to the Clerk of Court. The amount of attorney fees will be determined by the Court post trial pursuant to the guidelines set forth in *Johnson v. Georgia Highway Exp., Inc.*,[2] after timely and proper submission of an affidavit, brief, and evidence of the amount of fees incurred.

## Conclusion

In sum, the Court finds that Defendant knew of prior flooding on the property she was selling to Plaintiff, Defendant intended Plaintiff to rely on Defendant's Seller's Disclosure Notice which

---

[2] 488 F.2d 714, 717-19 (5th Cir. 1974).

disclosed no prior flooding; and Plaintiff sustained damages in the amount of $35,000. Accordingly, the Court finds in favor of Plaintiff and against Defendant on Plaintiff's claims of statutory fraud in a real estate transaction and common law fraud and awards Plaintiff $35,000, together with attorney fees and costs in an amount to be determined.

    SO ORDERED, December 11, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE